**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ）<br>SPENCER NEAL,　　　　　　　　　）<br>　　　　　　　　　　　　　　　）<br>　　　　Plaintiff,　　　　　　　）<br>　　　　　　　　　　　　　　　）<br>v.　　　　　　　　　　　　　　）<br>　　　　　　　　　　　　　　　）<br>OMNI BOSTON CORPORATION,　　　）<br>　　　　　　　　　　　　　　　）<br>　　　　Defendant.　　　　　　　）<br>　　　　　　　　　　　　　　　） | No. 1:23-cv-11682-JEK |

**MEMORANDUM AND ORDER ON PLAINTIFF'S**
**MOTION FOR DEFAULT JUDGMENT**

**KOBICK, J.**

Plaintiff Spencer Neal, who has spina bifida and uses a wheelchair to travel in public, filed this action against Omni Boston Corporation in July 2023, alleging that it discriminated against him on the basis of his disability by failing to remove architectural barriers in its hotel, Omni Parker House. Asserting claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the Massachusetts Equal Rights Act ("MERA"), M.G.L. c. 93, § 103, the complaint requests injunctive relief requiring Omni Boston to bring its hotel into compliance with the ADA, compensatory and punitive damages, and attorney's fees and costs. After Omni Boston was served but failed to answer or otherwise defend this case, the clerk entered a notice of default against it and Neal moved for default judgment. Omni Boston subsequently filed a notice of appearance and a response to Neal's motion. It conceded that Omni Parker House does not comply with Title III of the ADA and invited the Court to enter an injunction against it, but it opposed Neal's requests for damages and attorney's fees as well as the scope of his request for injunctive relief.

At a hearing on Neal's motion in January 2025, the Court received evidence concerning his request for damages and heard argument on his requests for injunctive relief and attorney's fees. Neal produced evidence that Omni Boston had failed to comply in part with the terms of a 2006 consent decree entered to resolve a lawsuit alleging comparable ADA violations, and Omni Boston introduced evidence that its hotel is undergoing extensive renovations that are expected to bring it into compliance with the ADA. Following the hearing, the parties jointly submitted a proposed scope of injunctive relief, but they did not reach an agreement to resolve Neal's requests for damages and attorney's fees.

For the reasons that follow, the Court concludes that Neal is entitled to judgment on both counts in the complaint. Neal will be awarded compensatory damages for the economic harm and emotional distress that he suffered, as well as attorney's fees and costs. The Court further concludes that Omni Boston's failure to comply in full with the 2006 consent decree, to the detriment of the rights of Neal and other guests with disabilities, also warrants a modest award of punitive damages. Finding that the parties' proposed scope of injunctive relief is reasonable and complies with Federal Rule of Civil Procedure 65, the Court will adopt it with one modification.

## BACKGROUND

### I.    <u>Factual Background.</u>

Because Omni Boston has defaulted, the following facts, which are drawn from the complaint, are deemed true for purposes of establishing liability. *See Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 377 (1st Cir. 2024).

Neal, who is paralyzed as a result of spina bifida, is physically disabled and uses a wheelchair for mobility and to travel in public. ECF 1, ¶ 11. From February 23 to February 24, 2023, Neal stayed at the Omni Parker House hotel in Boston, Massachusetts, which is owned and

operated by Omni Boston. *Id.* ¶¶ 6, 13. Omni Parker House is a public accommodation, and it held itself out as being handicapped accessible at all times relevant to this action. *Id.* ¶¶ 7, 12. The hotel was constructed, altered, remodeled, renovated, or upgraded after January 26, 1992. *Id.* ¶ 10.

Throughout his stay at Omni Parker House, Neal encountered architectural barriers that denied him full and equal access to the hotel's property. Specifically, he encountered barriers in or around the following locations: (1) the exterior accessible route; (2) the front entrance; (3) the front desk; (4) the lobby; (5) Parker's Bar, a bar on the premises; (6) guestroom 843; (7) the public men's restrooms; (8) the dining area; and (9) The Last Hurrah, a restaurant on the premises. *Id.* ¶ 15. At all relevant times, Omni Boston had actual and constructive notice that architectural barriers on its premises denied people with physical disabilities, like Neal, full and equal access to the property. *Id.* ¶ 24. Omni Boston refused to take steps to rectify these barriers. *Id.*

Neal plans to return to Omni Parker House to obtain lodging because of the hotel's proximity to downtown Boston, where Neal expects to perform work in the future. *Id.* ¶ 25.

## II. <u>Procedural History.</u>

Neal filed his complaint in July 2023. Invoking this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1367(a), he asserts two claims against Omni Boston: disability discrimination in violation of Title III of the ADA, 42 U.S.C. § 12181 *et seq.* (Count I); and denial of full and equal access in violation of the MERA, M.G.L. c. 93, § 103 (Count II). *See* ECF 1, ¶¶ 3, 26-41. Count I seeks injunctive relief, including an order requiring Omni Boston to cease discriminating against people with disabilities; modify its policies, practices, and procedures where necessary to ensure that people with disabilities have a full and equal opportunity to participate in and benefit from its facilities and services; and make Omni Parker House readily accessible to and usable by people

with disabilities. *Id.* at 13-14, ¶¶ 1-8. Count II seeks similar injunctive relief, as well as attorney's fees, compensatory and exemplary damages, and prejudgment interest. *Id.* at 14-15, ¶¶ 1-12.

Omni Boston was served with a summons and a copy of the complaint on August 3, 2023. ECF 6. After it failed to file a timely responsive pleading or otherwise defend against this action, the clerk entered, at Neal's request, a notice of default pursuant to Federal Rule of Civil Procedure 55(a) on February 15, 2024. ECF 9.

One month later, Neal filed a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b), requesting injunctive relief, damages, attorney's fees, and litigation costs. ECF 12. He supported his motion with, among other documents, a memorandum of law, ECF 13; proposed findings of fact and a proposed judgment, ECF 13-1; a "Site Accessibility Evaluation" for Omni Parker House prepared by Derek Mortland, the President of Advanced Access, LLC, ECF 13-10, 13-11; and an affidavit submitted by Mortland, ECF 13-4. As part of his request for injunctive relief, Neal proposed that the Court require Omni Boston to bring Omni Parker House into full compliance with Title III of the ADA by modifying or removing all architectural barriers within six months of the entry of default judgment. *See* ECF 13-1, ¶¶ 13(g)(i), 14(a). He further proposed that Omni Parker House be required to cease operations until it reaches full compliance with Title III of the ADA. *See id.* ¶¶ 13(g)(iii), 14(c). Neal requested $17,412 in attorney's fees and costs, and he asked the Court to schedule an evidentiary hearing to determine compensatory and exemplary damages. *Id.* ¶¶ 15-18.

Omni Boston subsequently entered a notice of appearance and, on April 8, 2024, responded to Neal's default judgment motion. ECF 14, 18. Noting that Omni Parker House's physical structure is nearly a century old, Omni Boston conceded that the hotel "is not fully accessible to individuals like Mr. Neal." ECF 18, at 4. It "invite[d] the Court to issue a permanent injunction"

and stated that it would assent to the injunctive relief requested in the complaint. *Id.* at 2, 4. Omni Boston attached to its response an Offer of Judgment that it sent Neal on September 5, 2023, in which it offered to consent to a judgment providing for the injunctive relief requested in the complaint and awarding Neal $2,501 in compensatory and exemplary damages. *See* ECF 18-1, at 48-51. The Offer of Judgment proposed that Omni Boston be required to remove all interior and exterior accessibility barriers at Omni Parker House within 15 months of the entry of judgment, provided that removal of those barriers "is readily achievable." *Id.* at 49. Neal rejected the Offer of Judgment. ECF 18, at 6.

While Omni Boston invited the Court to enter injunctive relief against it, it opposed Neal's request that Omni Parker House remedy all ADA violations within six months of the entry of judgment and cease operating until it is fully ADA-compliant, claiming that these demands were unreasonable and exceeded the scope of the relief requested in the complaint. *See id.* at 7-9. It also opposed Neal's request for attorney's fees, arguing that the time entries submitted by Neal's counsel contained duplicative and insufficiently described entries, as well as entries corresponding to non-legal administrative work. *See id.* at 10-15. Neal filed a reply on April 23, 2024. ECF 20. In support of his request for exemplary damages, Neal argued that Omni Boston has a history of discriminating against disabled people and failed to comply with the terms of a 2006 consent decree that was entered to resolve a lawsuit filed against it by disabled plaintiffs who, like Neal, alleged that it had violated Title III of the ADA. *See id.* at 7 (citing ECF 28, *Iverson v. Omni Bos. Corp.*, No. 04-cv-11654-WGY (D. Mass. July 19, 2006)).

On May 12, 2024, the Court scheduled a hearing on Neal's default judgment motion. ECF 21. The Court indicated that it would receive evidence regarding Neal's request for compensatory and exemplary damages and hear argument on Neal's request for attorney's fees and injunctive

relief. *Id.* However, the Court rejected Neal's request to require Omni Parker House to cease operations until becoming ADA-compliant, because that request exceeded the scope of relief demanded in the complaint and Neal had failed to demonstrate that it was an appropriate remedy for the alleged ADA violation. *Id.*

After a series of continuances, the hearing on Neal's default judgment motion was held on January 23, 2025. ECF 51. The Court heard testimony from two witnesses: (1) Neal testified about the architectural barriers he encountered during his stay at Omni Parker House; and (2) Zach Cook, a project manager in the design and construction department of Omni Boston's parent company, testified that Omni Parker House has started an extensive renovation project that he expects will be completed by the end of 2025. Cook testified that over 90% of the hotel is being renovated, including all 500-plus guest rooms, and that the renovation plans have been approved by the Architectural Access Board, a Massachusetts state agency that develops and enforces accessibility-related regulations applicable to public buildings. The parties agreed that these renovations will likely address many of the alleged ADA violations that Neal seeks to remedy. The Court also heard argument regarding Neal's requests for injunctive relief, damages, and attorney's fees. Following the hearing, the Court ordered the parties to meet and confer regarding the appropriate scope of injunctive relief and to submit a joint status report setting forth their respective positions. ECF 53.

On February 28, 2025, the parties jointly reported that they had reached an agreement regarding the appropriate scope of injunctive relief. ECF 54. They submitted a "proposed scope of injunction," which they asked the Court to adopt. ECF 54-1. Neal submitted a final supplement to his request for attorney's fees and costs the following week. ECF 55.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 "provides a two-step process for default judgment." *Granderson*, 98 F.4th at 377; Fed. R. Civ. P. 55(a)-(b). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The plaintiff may then move for a default judgment under Rule 55(b). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," the clerk must enter judgment provided that certain conditions are met. Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

"A defaulted party is deemed 'to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.'" *Granderson*, 98 F.4th at 377 (quoting *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999)). "Notwithstanding that concession, the district court 'may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action.'" *Id.* (quoting *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002)). "Where a court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object, the court has the discretion to order a default judgment 'without a hearing of any kind.'" *In re The Home Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002) (quoting *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 919 (1st Cir. 1988)). But a district court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to," among other things, "determine the amount of damages," "establish the truth of any allegation by evidence," or "investigate any other matter." Fed. R. Civ. P. 55(b)(2)(B)-(D).

**DISCUSSION**

**I.      Liability.**

Omni Boston, as the defaulted party, has admitted the truth of the well-pleaded allegations in the complaint for purposes of establishing its liability for violations of Title III of the ADA, 42 U.S.C. § 12182(a), and the MERA, M.G.L. c. 93, § 103. *See Granderson*, 98 F.4th at 377. Further, in its filings, Omni Parker has expressly conceded liability as to the ADA violation and effectively conceded liability as to the MERA violation. *See, e.g.*, ECF 18, at 4 ("Omni Boston recognizes that its hotel . . . is not fully accessible to individuals like Mr. Neal. But it is willing to make all reasonable efforts to bring its historic property into compliance with the ADA."). With respect to the latter claim, Omni Boston does not dispute that it violated the MERA; it proposed, in its offer of judgment, that the Court "declare that [it] has violated Massachusetts Equal Rights Law, M.G.L. c. 93 § 103," ECF 18-1, at 49; it characterizes Neal as a prevailing party for purposes of the ADA and "Massachusetts discrimination laws," ECF 18, at 6; and it admits that the Court may award Neal economic damages, which are available under the MERA but not the ADA, *see id.* at 5-6. Accepting the complaint's well-pleaded allegations as true, the Court thus concludes that Omni Boston is liable for violating Title III of the ADA and M.G.L. c. 93, § 103.[1]

---

[1] Neal has not cited any case in which a public accommodation like Omni Parker House has been held liable for disability discrimination under the MERA, nor has the Court located such a case through its own research. To be sure, the text of the MERA appears to encompass Neal's claim. It authorizes disabled plaintiffs to sue where they have been denied, among other things, "the full and equal benefit of all laws . . . including, but not limited to, the rights secured under Article CXIV of the Amendments to the Constitution." M.G.L. c. 93, § 103(a). Article CXIV, in turn, provides that "[n]o otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth." Mass. Const. art. CXIV. While the plain language of the MERA appears to allow Neal to seek redress for the deprivation of his right to the full and equal benefit of the accommodations at Omni Parker House on the basis of his disability, the Court need not decide, given the procedural posture of this case, whether the MERA provides a cause of action analogous to Title III of the ADA, as Neal contends. *Cf. Currier*

## II.    **Injunctive Relief.**

Title III of the ADA provides that, "[i]n the case of violations of sectio[n] 12182(b)(2)(A)(iv) . . . , injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter." 42 U.S.C. § 12188(a)(2). Neal and Omni Boston have submitted to the Court an agreement regarding the proposed scope of injunctive relief. *See* ECF 54-1. Pursuant to Federal Rule of Civil Procedure 65(d), "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(A)-(C). The parties' proposed injunction satisfies these requirements because it states that it is being issued to remedy Omni Boston's non-compliance with Title III of the ADA, and it specifically identifies 53 deficiencies at Omni Parker House that Omni Boston is enjoined to

---

*v. Nat'l Bd. of Med. Exam'rs*, 462 Mass. 1, 14-17 (2012) (holding that a female plaintiff, who alleged that she was discriminated against on the basis of sex and denied the benefits of her contractual relationship with the defendant because the defendant required her to forgo her break time to express breast milk, could bring a claim under the MERA); *Thurdin v. SEI Bos., LLC*, 452 Mass. 436, 440 (2008) (noting that "[t]he language of [M.G.L. c. 93, § 102(a)] drew on language in 42 U.S.C. §§ 1981 and 1982 (2000), as they existed at the time," and that M.G.L. c. 93, § 103 "extended the rights afforded under § 102 to persons with a handicap or over forty years of age" and "requires a 'reasonable accommodation' concerning those rights").

Massachusetts courts have not enumerated the elements of an architectural-barrier disability discrimination claim brought under the MERA. They have, however, repeatedly emphasized that a MERA claim, like a claim under 42 U.S.C. § 1981, requires that a plaintiff show proof of purposeful discrimination. *See Currier*, 462 Mass. at 16-17 (holding that the plaintiff's allegation that the defendant made exceptions to its accommodations policy for some individuals, but not for a lactating mother, "is sufficient to permit an inference of intentional discrimination"); *LaCava v. Lucander*, 58 Mass. App. Ct. 527, 535-36 (2003). The complaint's allegation that "the existence of architectural barriers at Defendant's place of public accommodation evidenced 'actual notice' of Defendant's *intent not to comply* with the [ADA]," now accepted as true, satisfies Neal's burden to demonstrate purposeful discrimination on the basis of disability. ECF 1, ¶ 17 (emphasis added). Taking the complaint's well-pleaded allegations as true, Omni Boston is liable for violating M.G.L. c. 93, § 103.

modify or replace within six months of the date on which the order is issued. *See generally* ECF 54-1. Although the Court will not order any further status reports in this matter, it will otherwise adopt the proposed injunction without substantive modification, as it satisfies Rule 65(d).

**III.    Damages.**

Pursuant to his MERA claim, Neal seeks $10,238.01 in compensatory damages and $75,000 in punitive damages. *See* ECF 28, at 5-6. These requests will be addressed in turn.

A.    Legal Standard.

"Following a default, a court must make an independent determination of the damages to be awarded." *Innovative Sports Mgmt., Inc. v. Serna*, 495 F. Supp. 3d 36, 43 (D. Mass. 2020) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). The plaintiff bears the burden "to establish the extent of the damages resulting from [the] defendant's violations." *Eisler v. Stritzler*, 535 F.2d 148, 153-54 (1st Cir. 1976). Except where the claim is for a sum certain, a plaintiff "'must introduce evidence to establish the amount of damages with reasonable certainty.'" *Perna v. Martinez*, No. 17-cv-11643-IT, 2021 WL 1210357, at *5 (D. Mass. Mar. 31, 2021) (quoting *IDEXX Distrib. Inc. v. Daniel A. Lauridia DVM PC*, No. 19-cv-00412-LEW, 2020 WL 265194, at *1 (D. Me. Jan. 17, 2020)). "Damages are proven through an evidentiary hearing, or through affidavits and other documentary submissions that provide a factual basis for determining the amount of damages to be awarded." *Id.*; *see* Fed. R. Civ. P. 55(b)(2)(B).

While Title III of the ADA provides only for injunctive relief, *see Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 304 (1st Cir. 2003), the MERA allows Neal to seek compensatory and exemplary (i.e., punitive) damages, M.G.L. c. 93, § 103(b).[2] Neal has not, however, identified any

---

[2] The phrase "exemplary damages" is synonymous with "punitive damages." *See* Exemplary Damages, *Black's Law Dictionary* (12th ed. 2024). While M.G.L. c. 93, § 103 uses the phrase

Massachusetts case law discussing damages awarded under the MERA, nor has the Court located such case law through its own research. The Court will therefore apply the legal standards applicable to damages awarded under Chapter 151B of the Massachusetts General Laws, which shares a broad remedial purpose with the MERA and similarly prohibits discrimination on the basis of disability. *See* M.G.L. c. 93, § 103(a) (MERA adopting definition of "handicap" used in Chapter 151B); *see generally Thurdin v. SEI Bos., LLC*, 452 Mass. 436 (2008) (discussing the relationship between the MERA and Chapter 151B).

      B.    <u>Compensatory Damages.</u>

      *1. Legal Standard.*

Neal requests $238.01 in pecuniary damages for the amount he spent at Omni Parker House and its restaurants, and $10,000 in non-economic damages for the pain, suffering, and emotional distress that he experienced. Under Massachusetts law, in cases where a plaintiff has suffered emotional distress *because of* a physical injury, as in personal injury and wrongful death cases, "[p]ain and suffering are of two types: physical pain and suffering, and mental pain and suffering." *Martin ex rel. Martin v. Town of Upton*, No. 485-cv-02162, 2007 WL 809818, at *2 (Mass. Super. Feb. 2, 2007) (citation and quotation marks omitted); *see also* Massachusetts Super. Ct. Civ. Prac. Jury Instructions, Massachusetts Continuing Legal Educ., Inc., §§ 2.1.14(b), 3.12 (3d ed. 2018 supplement) (model pain and suffering jury instructions for personal injury and wrongful death claims). In this case, however, Neal testified that he suffered emotional distress because of a discriminatory injury, not a physical one, and the majority of his evidence pertains to the emotional distress that he experienced. The Court's analysis will accordingly center on the evidence Neal has

---

"exemplary damages," Massachusetts case law almost exclusively uses the phrase "punitive damages." These terms are therefore used interchangeably in this Order.

produced concerning the emotional distress that he experienced because of the unlawful architectural barriers he encountered at Omni Parker House.

"'[C]laims for damages for emotional distress are inherently difficult to prove with certainty, to rebut, and to evaluate.'" *Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 825 (1997) (quoting *Keohane v. Stewart*, 882 P.2d 1293, 1305 (Colo. 1994)). Accordingly, "emotional distress, to be compensable, must be proved by substantial evidence of the emotional suffering that occurred, as well as substantial evidence of a causal connection between the complainant's emotional distress and the respondent's unlawful act." *DeRoche v. Massachusetts Comm'n Against Discrimination*, 447 Mass. 1, 7 (2006). In *Stonehill College v. Massachusetts Commission Against Discrimination*, the Supreme Judicial Court identified four factors that "should be considered" when fashioning an emotional distress damages award: "(1) the nature and character of the alleged harm; (2) the severity of the harm; (3) the length of time the [plaintiff] has suffered and reasonably expects to suffer; and (4) whether the [plaintiff] has attempted to mitigate the harm (e.g., by counseling or by taking medication)." 441 Mass. 549, 576 (2004) (citing Restatement (Second) of Torts § 905 cmt. i and § 912 (1979)).[3]

### 2. *Evidence Offered as to Damages.*

The evidence supporting Neal's request for compensatory damages consists of his testimony—which the Court found to be candid, credible, and sincere—as well as receipts and

---

[3] The *Stonehill* Court enumerated these factors in the context of discussing what the Massachusetts Commission Against Discrimination ("MCAD") should consider when fashioning an emotional distress damages award, but they apply with equal force where, as here, a court is tasked with fashioning such an award. *See, e.g.*, *Agin v. Foxboro Warriors, Inc.*, 74 Mass. App. Ct. 1114 (2009) (Rule 1:28 Decision) (applying *Stonehill* factors when reviewing emotional distress damages award assessed by a trial court judge against a defaulted defendant); *Smith v. Bell Atl.*, 63 Mass. App. Ct. 702, 723 (2005) ("In the context of awards for emotional distress in discrimination cases, the recent case of [*Stonehill*] is instructive, even though it arose in the context of awards made by the MCAD.").

photographs that he took during his stay at Omni Parker House. Neal testified about two categories of architectural barriers that he encountered during his stay at Omni Parker House: those in the hotel's public areas and those in guestroom 843, which is the "mobility accessible" room that he rented. His testimony regarding each category will be addressed in turn.

Neal encountered architectural barriers while checking in and eating at the hotel's public dining options. He could only see the top of the head of the employee who checked him in because the hotel lacks a lowered check-in counter. *See* ECF 52, Ex. 2, at 205. He testified that the experience was "almost dehumanizing" and made him feel "horrible" because he was unable to speak face-to-face with the employee who checked him in. Neal spent $209.12 for his hotel room at the Omni Parker House. *Id.*, Ex. 1, at 1. Later that evening, Neal spent $14.98 on dinner at The Last Hurrah, a restaurant in the Omni Parker House, but he was unable to use the accessible seating because it was located down several steps, which Neal could not descend in his wheelchair. *See id.*, Ex. 1, at 2; *id.*, Ex. 2, at 16. He therefore had to sit at a high-top table, and he testified that his head was roughly level with the tabletop. *See id.*, Ex. 2, at 17. Neal encountered the opposite issue when he went to breakfast at the hotel's restaurant the following morning. There, he was seated at a low-top table, but it lacked sufficient clearance for him to pull his wheelchair in. *See id.*, Ex. 2, at 31. Neal testified that, as a result, he had to lean over and pull his food and drink toward the edge of the table to reach it. Neal spent $13.91 on breakfast. *Id.*, Ex. 1, at 3.

Neal next discussed the architectural barriers that he encountered in his guestroom. Several fixtures and amenities in the guestroom were located at an inaccessible height. The mirror in his room was mounted too high for Neal to see his own reflection, *see id.*, Ex. 2, at 178, and Neal could not reach the clothes hangers, iron, or spare bedding in the closet because these items were located more than five feet off the ground, *see id.*, Ex. 2, at 146-50. The shower head, spare bath

towels, shampoo, and lotion were likewise placed at a height that Neal could not reach, and Neal was therefore unable to shower. *See id.*, Ex. 2, at 97, 132-34. While Neal did not testify that he needed to access the items in the closet during his stay, he explained that he typically needs to access spare bath towels when he showers because of the logistics involved with transferring in and out of his wheelchair.

The guestroom also lacked sufficient clear floor space for Neal to maneuver around the room in his wheelchair and access its furniture, fixtures, and amenities. Two beds were placed against the wall opposite the room's door, and a television stand, which was roughly centered between the beds, was placed against the wall adjacent to the door. *See id.*, Ex. 2, at 165-70. Neal testified that due to the placement of the television stand, he could not maneuver his wheelchair past the foot of the bed located closest to the door. This prevented him from reaching one of the room's two windows, which was located on the wall at the far side of the second bed. Accordingly, when he wished to close the blinds on that window before changing his clothes and going to bed, Neal—who is paralyzed from the waist down—had to climb out of his wheelchair and onto the first bed, get onto the ground between the two beds, pull himself onto the second bed, pull himself across the second bed to reach the window, lower the blinds, pull himself back across the second bed, lower himself to the floor, and then climb back onto the first bed. Neal testified that the process of closing the blinds was very tiring and left him sore. He did not otherwise testify to experiencing physical pain or discomfort during his stay at the hotel. Also, placed between the first bed and the bathroom was an upholstered chair, which, like the television stand, left insufficient room for Neal to maneuver his wheelchair. *See id.*, Ex. 2, at 187-89. Neal had to move the chair to access the bathroom and the blinds for the room's second window.

Neal did not complain to anyone at the hotel about the accessibility barriers he encountered, either during or immediately after his stay. None of the hotel's staff treated Neal in a rude or demeaning manner, but he testified that, based on his previous experiences with other public accommodations, he did not expect the staff to take him seriously or make modifications. After checking out, Neal did not see a medical or mental health provider for any physical injuries or emotional distress that he experienced during his stay, nor did he discuss those issues with his parents, with whom he lives, upon returning home. There is no evidence that the architectural barriers Neal encountered caused him to experience continued emotional distress after checking out.

At the hearing, counsel for Omni Boston questioned Neal about other ADA-related lawsuits that he has filed. Neal testified that it was "possible" that he had filed over 90 ADA-related lawsuits over the past couple of years, and he agreed that many of these were resolved via private settlements. On average, Neal estimates that he has personally received $1,500 to $2,000 from each of these settlements. Although Neal initially denied ever identifying himself as an "ADA tester," he later admitted that he has identified himself as an "ADA tester" in multiple complaints that he has filed, including the complaint in this case. *See* ECF 1, ¶ 25. Neal also confirmed that, following his two-day trip to Boston in February 2023, he sued four other Boston-area businesses for alleged ADA violations. Neal could not recall visiting any public accommodation during his two-day trip to Boston that he did not subsequently sue for allegedly violating the ADA.

      *3.  Analysis.*

Neal first requests $238.01 in pecuniary compensatory damages, which represents the amount that he paid for his guest room at Omni Parker House and his meals at The Last Hurrah

and another restaurant in the hotel. The Court will grant this request in full because Neal has substantiated it with receipts, *see* ECF 52, Ex. 1, and it is unopposed by Omni Boston.

Neal also requests $10,000 in non-economic damages, primarily as compensation for emotional distress that he experienced. In support of his request, Neal cites his inability to shower and freely move around his guestroom in his wheelchair, and his feeling of being looked down upon when checking in. Omni Boston disputes both the weight that should be afforded to Neal's testimony and the sufficiency of his emotional distress evidence. It first contends that because, in its view, Neal visited Omni Parker House with the intent of uncovering ADA violations, it is less likely that those violations caused him to suffer emotional distress. Building on this premise, Omni Boston argues that Neal's testimony alone—absent corroborating evidence such as doctor's visits, therapies, or discussions with friends and family—is insufficient to prove that the architectural barriers at Omni Parker House caused him to suffer emotional distress.

The Court is not persuaded by the argument that Neal is not entitled to *any* emotional distress damages for Omni Boston's unlawful acts, solely because he expected to find ADA violations when he booked a room at Omni Parker House or because he identifies as an ADA tester. A disabled individual is entitled to sue a public accommodation that fails to comply with state and federal law, and to seek damages supported by substantial evidence, regardless of whether that plaintiff is an "ADA tester." Whether Neal booked his stay at Omni Parker House with the intent of uncovering ADA violations may bear on the severity of the emotional distress he experienced upon encountering such violations. But it is unreasonable to argue that a plaintiff who expects to be discriminated against is not harmed by that discrimination. That logic improperly implies that the more pervasive a given form of discrimination—here, the denial of full and equal access to public accommodations on account of architectural barriers—and the more an individual

consequently expects to be discriminated against, the less that individual is harmed when he suffers such discrimination. To the extent that Omni Boston is concerned about a plaintiff like Neal requesting unreasonable damages, it is adequately protected by Massachusetts law, which requires a plaintiff to prove by substantial evidence that he experienced emotional distress caused by the defendant's unlawful act. *See Stonehill*, 441 Mass. at 576; *DeRoche*, 447 Mass. at 7 ("A critical point expressed in our *Stonehill* decision was that a finding . . . of discrimination, or retaliation, is insufficient by itself, as [a] matter of law, to permit an inference of emotional harm.").

The Court concludes that Neal has proved by substantial evidence that he suffered emotional distress caused by Omni Boston's failure to remove architectural barriers at Omni Parker House. *See DeRoche*, 447 Mass. at 7. Omni Boston has conceded that it discriminated against disabled guests, like Neal, by failing to remove architectural barriers throughout the hotel, as required by the ADA. *See* ECF 18, at 2, 4. And Neal has presented evidence that, because of these barriers, he was unable to shower, ate dinner at a table that was level to his head, had to pull himself across his room using only his upper body strength to reach a window, and could not use many of the items and amenities that non-disabled guests have access to. He further testified that, in the aggregate, these experiences led him to feel excluded and like he was different from other guests. Neal has thus established his entitlement to emotional distress damages.

The *Stonehill* factors support a modest damages award. The first factor—the nature and character of the harm—favors Neal. The sheer number of architectural barriers that Neal encountered, and the manner in which these barriers impeded Neal's ability to complete tasks as basic as taking a shower or closing window blinds for privacy, is striking. And the fact that Neal rented a room designated as wheelchair accessible, and then was unable to navigate around much

of the room in his wheelchair due to architectural barriers, is indicative of the hotel's fundamental failure to accommodate him.

The second *Stonehill* factor—the severity of the harm—favors Omni Boston. While Neal was consistently excluded and denied the benefits of his stay at Omni Parker House because of the architectural barriers he encountered, the evidence shows that he experienced only mild emotional distress as a result. Neal did not seek medical or mental health treatment for his emotional distress, and there is no evidence that the distress manifested in physical symptoms. Neal testified that he wants to be treated like "any normal person," and that he relies on public accommodations like Omni Parker House to comply with the ADA so that he does not feel different from other, non-disabled guests. It is apparent from Neal's testimony, as well as his affect and demeanor while testifying, that he felt indignity and humiliation after encountering certain architectural barriers, particularly those in his guestroom. But he did not expressly testify to what emotional distress, if any, he experienced as a result of many of the architectural barriers he faced. Neal did not, for example, offer testimony regarding any emotional distress he felt when he was forced to sit at a high-top table at The Last Hurrah, or when he was unable to pull his wheelchair under the low-top table he ate at for breakfast the next morning.

The third and fourth *Stonehill* factors—the length of time that Neal suffered and reasonably expects to suffer, and whether he attempted to mitigate the harm—also favor Omni Boston. While the evidence shows that Neal experienced emotional distress throughout his overnight stay at the hotel, there is no evidence that the distress persisted after he checked out. Further, Neal testified that although none of the hotel staff treated him in a rude or demeaning manner, he did not raise concerns about the barriers he encountered, or request assistance remedying them, during his stay.

Taken together, the Court concludes that the *Stonehill* factors support an award of $4,000 in non-economic compensatory damages for the emotional distress that Neal suffered. The evidence shows that the discriminatory consequences of the architectural barriers at Omni Parker House impeded Neal's right to full and equal access, but it also shows that he suffered relatively mild emotional distress that abated after he checked out. The Court will not separately award compensatory damages for physical pain and suffering. Neal credibly testified that he was sore and very tired after he had to rely solely on his upper body to cross the room and close the blinds, but this testimony does not, without more, independently support an award of physical pain and suffering damages.

Neal will therefore be awarded a total of $4,238.01 in compensatory damages. Neal is also entitled to prejudgment interest on this award. *See* M.G.L. c. 231, § 6B (requiring clerk of court to assess prejudgment interest "at the rate of twelve per cent per annum from the date of commencement of the action" when a plaintiff is awarded compensatory damages in a tort action); *cf. Salvi v. Suffolk Cnty. Sheriff's Dep't*, 67 Mass. App. Ct. 596, 609-10 (2006) (awarding prejudgment interest under M.G.L. c. 231, § 6B to plaintiff who prevailed on Chapter 151B discrimination claim).

C.    Punitive Damages.

    *1.  Legal Standard.*

Whereas compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct," "punitive damages serve a broader function; they are aimed at deterrence and retribution." *Aleo v. SLB Toys USA, Inc.*, 466 Mass. 398, 412 (2013) (quotation marks omitted). In discrimination cases, punitive damages may be awarded "only where the defendant's conduct is outrageous or egregious," such that "it justifies

punishment and not merely compensation." *Haddad v. Wal-Mart Stores, Inc.*, 455 Mass. 91, 110 (2009). To determine "whether the defendant's conduct was so outrageous or egregious that punitive damages . . . are warranted, the fact finder should consider all of the factors surrounding the wrongful conduct." *Id.* at 111. These factors may include:

1. Whether there was a conscious or purposeful effort to demean or diminish the class of which the plaintiff is a part (or the plaintiff because he or she is a member of the class);
2. Whether the defendant was aware that the discriminatory conduct would likely cause serious harm, or recklessly disregarded the likelihood that serious harm would arise;
3. The actual harm to the plaintiff;
4. The defendant's conduct after learning that the initial conduct would likely cause harm; [and]
5. The duration of the wrongful conduct and any concealment of that conduct by the defendant.

*Id.* (capitalization altered). A "'proper punitive damage award' is one that is 'sufficient to send a clear message to the defendant of condemnation for its reprehensible behavior.'" *Aleo*, 466 Mass. at 412 (ellipses and brackets omitted) (quoting *Clifton v. Massachusetts Bay Transp. Auth.*, 445 Mass. 611, 624 (2005)).

### 2. *Evidence Offered as to Punitive Damages.*

Neal contends that punitive damages are warranted because the evidence shows that Omni Boston violated not only his rights under the ADA and the MERA, but also a 2006 consent decree that it entered to resolve a lawsuit filed by disabled plaintiffs who, like him, alleged that Omni Boston had violated the ADA by failing to remove architectural barriers located throughout Omni Parker House. *See* ECF 52, Ex. 4; ECF 28, *Iverson v. Omni Bos. Corp.*, No. 04-cv-11654-WGY (D. Mass. July 19, 2006). Like the injunction proposed by the parties in this case, the consent decree entered in *Iverson* required Omni Boston to make specific alterations and improvements to the exterior and interior of Omni Parker House to ensure that it complied with Title III of the ADA.

*See generally* ECF 28-2, *Iverson v. Omni Bos. Corp.*, No. 04-cv-11654-WGY (D. Mass. July 19, 2006). Among other things, the consent decree required Omni Boston to add a wheelchair lift or elevator to provide access to Parker's Bar from the hotel, *id.* § 2.3; to maintain a minimum number of accessible guest rooms that are reserved for disabled guests and spread throughout the hotel, *see id.* §§ 3.1-3.3; and to make modifications to accessible guest rooms to ensure that they have, for example, accessible routes and adequate clear floor space for wheelchair users, *see generally id.* §§ 3.3-3.19. The parties to the consent decree agreed that its terms are "forever binding," and Omni Boston promised to "make reasonable efforts to complete the alterations and modifications" required by the consent decree within two years of its entry—that is, by July 19, 2008. ECF 28, ¶¶ 2, 6, *Iverson v. Omni Bos. Corp.*, No. 04-cv-11654-WGY (D. Mass. July 19, 2006).

A representative of Omni Boston, Zach Cook, testified about its compliance with the 2006 consent decree at the default judgment hearing. He reported that, pursuant to the consent decree, Omni Boston had installed an elevator leading to Parker's Bar and maintained a minimum number of ADA-accessible guest rooms, which are spread throughout the hotel and reserved for disabled guests. Cook was not, however, able to say whether Omni Boston had complied with any of its other obligations under the consent decree, and he testified that there are "definitely" areas of Omni Parker House that are not in compliance with its terms. Cook also testified about renovations underway at the hotel, which he expects will be completed before the end of 2025. Over 90% of the hotel is being renovated, including all of its 500-plus guestrooms, and the Architectural Access Board, which develops and enforces accessibility-related regulations applicable to public buildings, has approved the architectural plans that will be used during the renovation. Accordingly, Cook testified that he is confident that Omni Parker House will fully comply with the 2006 consent decree when the renovation is complete.

The evidence shows that many of the architectural barriers that Neal encountered in his guest room are attributable to Omni Boston's failure to comply with the 2006 consent decree. For example, the consent decree required Omni Boston to "provide an accessible route at least 36 inches wide connecting all accessible spaces and elements," and to "ensure that all operable controls . . . and operable equipment . . . are within clear floor space" in all guest rooms designated as wheelchair accessible. ECF 28-2, §§ 3.6, 3.7, *Iverson v. Omni Bos. Corp.*, No. 04-cv-11654-WGY (D. Mass. July 19, 2006). Neal measured the clear floor space between various objects in his room, and those measurements are depicted in the photographs that he entered into evidence. *See generally* ECF 52, Ex. 2. This evidence demonstrates that Omni Boston failed to provide the requisite 36 inches of clear floor space between, among other things, the door to Neal's guestroom and the foot of the bed located closest to the door, *see id.*, Ex. 2, at 168-70 (approximately 32 inches); the foot of that bed and the television stand, *see id.*, Ex. 2, at 165-67 (approximately 32 inches); the television stand and the foot of the second bed, *see id.*, Ex. 2, at 160-61 (approximately 22 inches); and the upholstered chair and the bathroom doorframe, *see id.*, Ex. 2, at 187-88 (approximately 28 inches). The consent decree further required that all closet racks and shelves in wheelchair accessible rooms "be lowered to a maximum high forward reach of 48 inches." ECF 28-2, § 3.13, *Iverson v. Omni Bos. Corp.*, No. 04-cv-11654-WGY (D. Mass. July 19, 2006). And it required that all towel racks and storage shelves "be mounted in a location creating a maximum forward reach of 48 inches . . . and a maximum side reach of 54 inches." *Id.* § 3.17. The evidence shows that Omni Boston also failed to comply with these obligations. The bath towels and spare toilet paper were located on a shelf over 70 inches off the floor, *see* ECF 52, Ex. 2, at 133-34; the clothes rack was located over 60 inches off the floor, *see id.*, Ex. 2, at 149-50; and the iron and

spare bedding were on a closet shelf mounted over 65 inches off the floor, *see id.*, Ex. 2, at 147-50.

### 3. *Analysis.*

Neal requests an award of $75,000 in punitive damages, which he argues is necessary to punish Omni Boston for failing to comply with the 2006 consent decree and to deter it from violating its obligations under the ADA and the MERA in the future. Omni Boston argues, as a threshold matter, that Neal has not satisfied the high burden for awarding punitive damages because there is insufficient evidence that it failed to comply with any provision in the 2006 consent decree. That argument is belied by the record. Omni Boston's own representative testified that there are areas of Omni Parker House that do not comply with the consent decree. And the evidence shows that Omni Boston failed to comply with several specific provisions of the consent decree designed to ensure that guestrooms designated as wheelchair accessible are, in fact, wheelchair accessible. Omni Boston has not produced any evidence to suggest otherwise.

Applying the five *Haddad* factors to this case, the Court concludes that Omni Boston's conduct—specifically, its knowing failure to comply with the terms of the 2006 consent decree, thereby perpetuating many of the discriminatory architectural barriers that Neal encountered—is outrageous and warrants an award of punitive damages. The fourth and fifth *Haddad* factors support this conclusion. *See Haddad*, 455 Mass. at 111 (fourth factor concerning Omni Boston's conduct after learning that its "initial conduct would likely cause harm"; fifth factor concerning the duration of the wrongful conduct and any steps Omni Boston took to conceal it). Since 2004, when the *Iverson* suit was filed, Omni Boston has been on notice that Omni Parker House is not in compliance with Title III of the ADA. And in 2006, it consented to a court order requiring it to make numerous alterations and modifications that would bring it into compliance. Nearly 20 years

have passed since the consent decree was entered, and Omni Boston has not offered any explanation for its failure to comply fully with this Court's order. That failure constitutes a violation of not only  a court order and Neal's rights, but also the rights of other disabled individuals who, like Neal, rented a room at Omni Parker House that had been incorrectly advertised as wheelchair accessible. Further, knowing that Omni Parker House was not in compliance with the ADA, Omni Boston failed to comply with the consent decree, demonstrating a measure of recklessness with respect to the possibility that its guests could be harmed by the noncompliant architectural barriers. The sheer duration of Omni Boston's noncompliance with the 2006 consent decree, coupled with the possibility of resultant harm to individuals with disabilities, is the type of outrageous conduct that "warrants public condemnation and punishment." *Id.*

The first and third *Haddad* factors, on the other hand, weigh in Omni Boston's favor. While the evidence shows that Omni Boston knowingly failed to comply fully with Title III of the ADA and the 2006 consent decree, there is no evidence that it engaged in *purposeful* efforts to demean Neal or other disabled guests. *See id.* (first factor querying "whether there was a conscious or purposeful effort to demean or diminish" the plaintiff or the class to which he belongs). And as discussed, the harm suffered by Neal was not long-lasting. *See id.* (third factor concerning "the actual harm to the plaintiff"). The second factor does not favor either party, because although the evidence shows that Omni Boston was aware that architectural barriers at Omni Parker House were likely to harm disabled plaintiffs, there is no evidence that these barriers caused, or were likely to cause, *severe* harm. *See id.* (second factor asking whether the defendant was aware of, or recklessly disregarded, the likelihood that its discriminatory conduct would cause *serious* harm).

Weighing these factors, the Court concludes that Neal's request for $75,000 in punitive damages is excessive for two reasons. First, there is a lesser need for deterrence in this case because

Omni Parker House is undergoing comprehensive renovations that will, according to Omni Boston's representative, bring the publicly accessible portions of the hotel into full compliance with the 2006 consent decree and applicable accessibility-related laws and regulations. *See id.* at 110-11 (noting that punitive damages serve to condemn past egregious conduct and to deter future similar conduct). Second, the foregoing application of the *Haddad* factors demonstrates that although Omni Boston's conduct is sufficiently outrageous to warrant punitive damages, the degree of harm inflicted and the absence of malice favor a smaller award. The Court will, accordingly, award Neal $20,000 in punitive damages.

## IV.    Attorney's Fees.

The ADA permits a "prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. "The term 'prevailing party' is a 'legal term of art.'" *Suárez-Torres v. Panaderia y Reposteria España, Inc.*, 988 F.3d 542, 551 (1st Cir. 2021) (quoting *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001)). "To qualify as a 'prevailing party,' the party seeking to recover fees must demonstrate (1) 'a material alteration of the legal relationship of the parties' (2) that possesses the requisite 'judicial imprimatur.'" *Id.* (quoting *Buckhannon*, 532 U.S. at 604-05). "A material change occurs when the plaintiff succeeds on 'any significant issue in litigation which achieves some of the benefit the [plaintiff] sought in bringing the suit.'" *Id.* (brackets in original) (quoting *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989)). A plaintiff who obtains an "enforceable judgmen[t] on the merits" qualifies as a prevailing party. *Buckhannon*, 532 U.S. at 604. It is undisputed that Neal qualifies as the prevailing party in this litigation.

"When fashioning a fee award, the district court ordinarily starts by constructing what has come to be known as the lodestar," which is generally "the product of the number of hours appropriately worked times a reasonable hourly rate or rates." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011) (citations omitted). As "[t]he party seeking the award," Neal "has the burden of producing materials that support the request," which "should include counsel's contemporaneous time and billing records, suitably detailed, and information anent the law firm's standard billing rates." *Id.* (citations omitted). It is "the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 296 (1st Cir. 2001). In fashioning a reasonable fee, however, the court's task "'is to do rough justice, not to achieve auditing perfection.'" *Pérez-Sosa v. Garland*, 22 F.4th 312, 321-22 (1st Cir. 2022) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Courts "'may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'" *Id.* at 322 (quoting *Fox*, 563 U.S. at 838).

Neal requests $36,755 in attorney's fees for his lead counsel, Colin Meeker, who billed 115.6 hours at a rate of $325-$350 per hour. *See* ECF 55-1. He also requests $1,675 in fees for a paralegal, Robert Martell, who billed 13.4 hours at a rate of $125 per hour. *See id.* And he requests $1,780 in attorney's fees for local counsel, Edward Garno, who billed 8.9 hours at a rate of $200 per hour. *See* ECF 55-2. Neal also requests $2,247.84 in litigation costs. ECF 55-1, at 17. Omni Boston opposes these requests on two grounds. First, it contends that Neal's counsels' billing records contain entries that are duplicative and insufficiently detailed, as well as entries for administrative tasks. *See* ECF 18, at 10. Second, it argues that the Court should strike all time billed after Neal received its Offer of Judgment, claiming that such time was not productively spent

because Omni Boston offered Neal judgment on the "exact terms" prayed for in the complaint. *Id.* at 11.

Neal submitted his first request for attorney's fees when he moved for default judgment in March 2024. *See* ECF 13, at 5-14; ECF 13-7. After receiving Omni Boston's response to that motion, which raised the objections to Neal's fee request summarized above, Attorney Meeker revised many of the entries on his timesheet to address Omni Boston's concerns. Neal submitted his final attorney's fees request on March 3, 2025, and he states that it "supplements and replaces" all previous fee requests. ECF 55, at 1. Omni Boston has not specifically objected to any entries in the revised timesheet supporting Neal's final attorney's fees request, but it renewed its original objections at the hearing on Neal's default judgment motion.

The Court starts with Omni Boston's objections that Attorney Meeker's timesheet contains entries for duplicative work, administrative work, and work that is not described in sufficient detail. Each objection will be addressed in turn. First, most of Omni Boston's objections regarding duplicative work are now moot. Omni Boston argued, for example, that Attorney Meeker's original timesheet contained numerous duplicative entries on March 1, 2023. ECF 18, at 12 (noting four entries titled "Entity Research," two entries titled "Creation of new SB file," and two entries titled "02252023 CGM Initial reviewed). These entries have since been revised. The final timesheet submitted by Attorney Meeker contains two entries for "entity" or "entity and property" research (1.4 hours total) and one entry for "creation of new SB file" (0.2 hours total) on March 1, 2023. ECF 55-1, at 16. It still contains two entries titled "02252023 CGM Initial reviewed," but these entries only account for 0.2 total hours of work. *See id.* at 15-16. Omni Boston similarly objected to nine entries between March 30 and July 27, 2023, concerning the creation or review of a summons. *See* ECF 18, at 12. Attorney Meeker's final timesheet still contains seven entries

pertaining to work on a summons, but they add up to 1.1 total hours of work, all but 0.1 hours of which is attributed to Martell. *See* ECF 55-1, at 12-15. To be sure, Attorney Meeker did not edit or delete every entry that Omni Boston objected to as duplicative. The final timesheet still contains, for example, 10 entries pertaining to Attorney Meeker's *pro hac vice* application. *See* ECF 18, at 12; ECF 55-1, at 12-14. But these entries add up to a total of 1.1 hours of work, 0.8 of which was billed by Martell. *See* ECF 55-1, at 12-14. While 10 separate entries for a single *pro hac vice* application seems excessive, the total amount of time billed is not unreasonable. Having reviewed the entirety of the revised timesheet submitted by Attorney Meeker, the Court concludes that he has not unreasonably billed for duplicative work.

Omni Boston next objects that Attorney Meeker has improperly billed for time spent on administrative and clerical tasks. Courts often reduce fees for time spent by attorneys on administrative and clerical tasks. *See E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 353-54 (D. Mass. 2013) (collecting cases); *Matalon v. Hymnes*, 806 F.3d 627, 638 (1st Cir. 2015) ("At times, we have indicated our approval of fee awards that set two separate hourly rates for a particular attorney—one for 'core' tasks . . . and a lower one for 'non-core' tasks, which are 'less demanding,' such as 'letter writing and telephone conversations.'" (quoting *Brewster v. Dukakis*, 3 F.3d 488, 492 n.4 (1st Cir. 1993))). A couple of entries originally described as "matter admin" have been removed from Attorney Meeker's final timesheet, but several other entries pertaining to administrative work remain. *Compare* ECF 18, at 13 (objecting to specific entries as pertaining to administrative work), *with* ECF 55-1, at 12-15. Attorney Meeker's final timesheet still includes, for example, several entries for reviewing invoices and receipts, sending and uploading photos, and creating binders in advance of the January 2025 hearing. *See* ECF 55-1, at 1-16. The Court

will, accordingly, reduce Attorney Meeker's fee request by 5% to account for administrative work that he has billed for. *See Matalon*, 806 F.3d at 638.

Finally, Omni Boston argues that many of the entries on Attorney Meeker's original timesheet were insufficiently described because they failed to identify the subject matter of the work that was billed for. *See* ECF 18, at 13-14. The Court agrees that Attorney Meeker's original timesheet contained many vague entries. *See generally* ECF 13-7 (containing entries with descriptions such as "internal messages sent/reviewed," "emails sent/reviewed regarding Neal v. Omni Boston Corporation," or simply "drafting document for case"). The entries in Attorney Meeker's final timesheet do not suffer from the same deficiency. Virtually all entries in the final timesheet specify not only the type of work performed (e.g., reviewing or sending emails, drafting documents), but also the subject matter of that work (e.g., that it related to Omni Boston's Offer of Judgment or Neal's motion for default judgment). *See generally* ECF 55-1, at 1-16. The Court therefore concludes that Attorney Meeker's and Martell's fee requests are sufficiently detailed.

The same cannot be said, however, of Attorney Garno's fee request. *See* ECF 55-2. Virtually all entries in his time sheet are insufficiently detailed. His timesheet includes over 20 entries described only as "review email." *See id.* at 1. It also includes several entries pertaining to phone calls with, or emails sent to, Attorney Meeker, but those entries fail to identify the subject matter of the communications. *See id.* at 1-2. No more than a handful of Attorney Garno's entries— namely, those pertaining to the review of documents and local rules pertaining to "df," which abbreviation presumably refers to Neal's motions for default and default judgment—can be described as sufficiently detailed. *See id.* Attorney Garno's fee request will therefore be reduced by 80%.

Omni Boston has additionally lodged a categorical objection to Neal's attorney's fees request, arguing that Neal is not entitled to any fees incurred after he received Omni Boston's Offer of Judgment on September 5, 2023. *See* ECF 18, at 14-15. In Omni Boston's view, because it offered Neal "the exact injunctive relief that [he] prayed for in his Complaint," all fees incurred after he received and rejected the Offer of Judgment are either redundant or unnecessary. *Id.* This argument is not persuasive. Neal was not required to accept Omni Boston's Offer of Judgment, and Omni Boston has not cited any case declining to award attorney's fees incurred in connection with work that postdated an Offer of Judgment that would have given the plaintiff only part of the relief requested in the complaint. Nor has the work his counsel performed since Neal rejected the Offer of Judgment been unnecessary: Neal will receive over $24,000 in compensatory and punitive damages, whereas he would have received $2,501 in damages if he had accepted the Offer of Judgment. *See* ECF 18-1, at 49. Neal's fee request will therefore not be reduced based on work performed after he rejected the Offer of Judgment.

In sum, attorney's fees will be awarded as follows: Attorney Meeker's fee request will be reduced by 5% from $36,755 to $34,917.25, Robert Martell will receive his full fee request of $1,675, and Attorney Garno's fee request will be reduced by 80% from $1,780 to $356. The Court will also award Neal his full request for $2,247.84 in litigation costs. *See* ECF 55-1, at 16-17. Omni Boston does not specifically object to this latter request, and the costs are reasonably related to this litigation.

### CONCLUSIONS AND ORDERS

For the foregoing reasons, Neal's Motion for Default Judgment, ECF 12, is GRANTED in part. Neal is entitled to judgment on Counts I and II of the Complaint.

As the prevailing party, Neal is entitled to injunctive relief, 42 U.S.C. § 12188, and an award of reasonable attorney's fees and litigation costs, 42 U.S.C. § 12205, on Count I. The parties' Proposed Scope of Injunction, ECF 54-1, is ADOPTED and INCORPORATED in the Judgment entered on the same day as this Memorandum and Order. Omni Boston is ORDERED to pay Neal $39,196.09 in attorney's fees and litigation costs.

Neal is entitled to an award of compensatory and exemplary damages on Count II. M.G.L. c. 93, § 103. Omni Boston is ORDERED to pay $4,238.01 in compensatory damages and $20,000 in exemplary damages. In accordance with M.G.L. c. 231, § 6B, Neal is further awarded $847.60 in prejudgment interest on the award of compensatory damages.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: March 28, 2025